IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SAMUEL HOGSETT**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Civil No. **08-502-CJP**[1] |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

**PROUD, Magistrate Judge:**

Pursuant to 42 U.S.C. § 405(g), plaintiff Samuel Hogsett, represented by counsel, is before the Court seeking review of the final decision of the Social Security Administration denying his Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423, or even a Period of Disability (POD) pursuant to 42 U.S.C. § 416(i). **(Doc. 2).** In addition to submitting the administrative record **(Doc. 14 (hereinafter "R."))**, plaintiff and defendant have fully briefed their positions. **(Docs. 18 and 21).**

Plaintiff Hogsett's physical ailments are not in dispute, per se. Rather, this appeal centers around the sufficiency of the evidence and legal analysis by Administrative Law Judge ("ALJ") Thomas C. Muldoon. More specifically, plaintiff argues that:

1. The ALJ's decision is not supported by substantial evidence;

2. The ALJ did not give adequate weight to Dr. Vest and Dr. Tippett's

---

[1]In accordance with 28 U.S.C. § 636(c)(1), upon the consent of the parties, this case was transferred to the undersigned magistrate judge for all proceedings and entry of judgment. **(Docs. 5, 11 and 15).**

1

       opinions, which reflected that plaintiff could only perform physical activity at less than a sedentary level;

3.       The ALJ failed to properly analyze the physical and mental demands of plaintiff's past work, per SSR 82-62;

4.       The ALJ misclassified plaintiff's past work as "light," when it was "medium" as performed; and

5.       Based on plaintiff's age, limited education and proper residual functional capacity, he should be deemed disabled.

**(Docs. 2 and 18).**

## Overview of the Evidence and the Relevant Procedural History

In January 2005, plaintiff applied for DIB, alleging the onset of disability as of January 28, 2003, due to a back injury sustained at work. **(R. 58-62 and 70).** At the time plaintiff was injured, he was 48 years old and had been working as a laborer/packer in the construction industry, which can be characterized as "medium" exertional work, as described by plaintiff– meaning it required lifting up to 50 pounds. **(*See* R. 77, 144, 208 and 20 C.F.R. § 1567).** Plaintiff's self-described work history includes two other relevant jobs: ((1) assembler, requiring lifting up to 10 pounds, sitting for 30 minutes out of the day, and standing, walking and bending in all manners throughout the day **(R. 78)**; and (2) truck driver, requiring lifting less than 10 pounds, sitting for six and a half hours per day, walking and standing for one and a half hours each, climbing for three and a half hours, and kneeling, crouching and reaching for 30 minutes to an hour **(Doc. 80)**.

On February 10, 2003, shortly after injuring his back, plaintiff was examined by Dr. Bob R. Burris, M.D. **(R. 144-145).** At that time, plaintiff complained of lumbar discomfort, radiating down his left leg. Plaintiff rated his pain as 10 on a 0-10 scale, for which he had been taking

Tylenol.  A straight leg raise test was negative, and x-rays showed only mild degenerative changes.  Plaintiff was diagnosed with a lumbar strain with radiculopathy.  Physical therapy, Darvocet and Flexeril were prescribed; and plaintiff was instructed not to lift more than 15 pounds, and to refrain from bending, lifting, kneeling and climbing.  However, an MRI taken February 18, 2003, revealed disc desiccation at L5-S1; disc bulging mildly at L3-L4, minimally at L2-L3 and L4-L5 and L5-S1; and minimal bilateral lower facet degenerative changes.  **(R. 153).** The MRI confirmed that there was no disc herniation or impingement.  **(R. 153).**  An EMG showed only a mildly abnormal delay in the left posterior tibial motor nerve conduction velocity, consistent with very mild left posterior tibial neuropathy.  **(R. 154).**

In March 2003, plaintiff began treatment with Dr. Bruce T. Vest, M.D.  Plaintiff was described as being "somewhat better" than he had been.  **(R. 159).**  However, a straight leg raise test was positive on the left side, although plaintiff's strength was 5/5.  **(R. 160).**  Like Dr. Burris, Dr. Vest concluded plaintiff had a lumbar strain with left lumbar radiculopathy and disc degeneration at L2-S1.  **(R. 160).**  Prednisone was prescribed, and there was hope to wean plaintiff off his narcotic medication.  **(R. 160).**  Plaintiff was advised to rest, avoid strenuous activity and see a chiropractor.  **(R. 160).**  Dr. Vest foresaw plaintiff returning to work in early April, 2003. **(R. 160).**

When plaintiff saw Dr. Vest on April 22, 2003, plaintiff was using a cane, and continued to have tenderness in his spine with left leg involvement, although his strength was still 5/5.  **(R. 161).**  Plaintiff was told to take Ibuprofen and to wean off the Darvocet and Flexeril.   **(R. 161).**  In May 2003, sacroiliac pain was noted.  **(R. 162).**  And, on June 3, 2003– just over five months post injury– Dr. Vest released plaintiff to return to regular duty at work.  **(R. 163 and 184).**

Plaintiff's lumbar strain was characterized as "resolving," his left sacroiliac joint was non-tender (helped by a steroid injection), but efforts to wean plaintiff from Darvocet and Flexeril continued. **(R. 163).**

In July 2003, plaintiff reported increased pain, and in August he described the pain as severe at times. **(R. 165).** The straight leg raise test was positive and plaintiff's gait was mildly antalgic on the left side. **(R. 165).** Plaintiff told Dr. Vest that he was not working because he had been terminated, but that he was looking for work. **(R. 165).** Dr. Vest opined that he thought it would be difficult for plaintiff to be working, and he recommended additional steroid injections. **(R. 165).** Plaintiff was issued work excuses from that time through the end of 2003 (presumably for purposes of receiving unemployment benefits). **(R. 185-190).**

Plaintiff received epidural injections through the end of 2003. **(R. 194-202).** On October 30, 2003, plaintiff reported that he was looking for work. **(R. 168).** Plaintiff reported improvement in terms of pain, but in December 2003, he rated his pain at eight on a 10 scale, and Dr. Vest deemed plaintiff's condition "chronic," but not requiring surgery. **(R. 166-170).** Dr. Vest noted that plaintiff's ability to work needed to be determined. **(R. 170).**

In February 2004 a functional capacity evaluation was performed, indicating plaintiff might be able to function at the sedentary level, walking and standing for only brief periods. **(R. 208).** The equivocation reflects indications in the test results that plaintiff was making a submaximal effort relative to his left side. **(R. 208).** At that time, plaintiff sat for 90 minutes without complaint; he stood for 10 minutes, but asked to sit due to pain. **(R. 218).**

On February 13, 2004– one year post injury– plaintiff rated his pain as seven on a ten scale, requiring Darvocet. **(R. 172).** Dr. Vest noted the recent functional capacity evaluation

4

indicating plaintiff was capable of "sedentary" work; accordingly, permanent restrictions were prescribed: no lifting over 10 pounds; walk or stand for only brief periods; and work only at the sedentary level. **(R. 172).** Those same restrictions regarding sedentary work were noted in March 2004, when plaintiff described his pain as seven on a 10 scale. **(R. 174).** In April 2004, plaintiff described his back pain as "tolerable," and he indicated he felt "a little better." **(R. 175).**

When plaintiff was evaluated by MERS Goodwill in June 2004, he was using a cane and wearing a back brace. **(R. 457).** July 21, 2004 medical notes indicate plaintiff had exacerbated his injury and was experiencing increased pain. **(R. 176).** Again, Darvocet, Flexeril and epidural injections were prescribed. **(R. 176).** A month later, Dr. Vest noted substantial improvement, although plaintiff still experienced some tightness and occasional pain, with no motor weakness or radicular pain. **(R. 177).** Plaintiff was only taking one pain pill per day, along with Biofreeze, which he obtained through his chiropractor. **(R. 177).** Darvocet, stretching, Biofreeze and an epidural injection were prescribed. **(R. 177).** In December 2004 plaintiff was only slightly tender, with no spasms. **(R. 179).** Dr. Vest opined that injections were no longer necessary, although Darvocet and Flexeril were still prescribed. **(R.179).**

When plaintiff saw Dr. Vest next, in February 2005– two years post injury– plaintiff was tender and tight, and possible stenosis was noted. **(R. 180).** In February 2005, plaintiff completed a questionnaire indicating that he was in pain half of every day; he could not carry over 10 pounds without pain; he could stand for 15-20 minutes and sit for only a few minutes at a time; and he could walk one block, but would have to stop three or four times. **(R. 92-93).** Dr. B. Rock Oh's March 2005 residual functional capacity assessment indicates plaintiff could lift

and carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk and sit for six hours in an eight hour work day. **(R. 225).** Occasional postural limitations were noted. **(R. 226).**

In August 2007, ALJ Muldoon conducted an evidentiary hearing. **(R. 513).** Plaintiff testified that he had a seventh grade education, and that his reading and writing skills were not very good. **(R. 516 and 522).** Plaintiff thought his back had worsened over time. **(R. 518).** According to plaintiff, he cannot lift and carry a gallon of milk; he can only sit for 35-40 minutes due to pain; standing is limited to 10 minutes; and he can only walk a half block. **(R. 519).** Plaintiff described being in constant pain, that is severe two to three times per day, causing him to have to lay down and take medication. **(R. 520).** Plaintiff indicates he drives very little, perhaps twice per month. **(R. 521).** By his wife's account, plaintiff is less than 50% since his injury, and is in daily pain. **(R. 523).**

On October 17, 2007, plaintiff went to the emergency room due to back pain. **(R. 503).** Plaintiff rated his pain a four on a 10 scale with medication. **(R. 507).** The straight leg raise test was negative. **(R. 510).** Plaintiff was prescribed Darvocet and Flexeril. **(R. 511).**

In November 2007, Dr. Jack C. Tippett, and orthopedic surgeon, examined plaintiff and reviewed his medical records. **(R. 487).** At that time, plaintiff was using a cane and walking with a moderate limp, but he was able to walk across the room without a cane, albeit with a more prominent limp. **(R. 487).** Plaintiff got on and off the exam table with some difficulty. **(R. 488).** X-rays showed mild compression at L-1, slight narrowing at L5-S-1, and mild degenerative changes in the lower lumbar spine. **(R. 490).** Dr. Tippett concluded plaintiff had degenerative disc disease of the lower lumbar spine, with left lumbar radiculopathy, as well as mild weakness in his left upper extremity. **(R. 489)**. Relative to plaintiff's work-related

abilities, Dr. Tippett opined that plaintiff could lift up to 10 pounds (frequently and occasionally); sit for 10 minutes at a time, for a total of four hours during an eight hour work day; stand for five minutes at a time, for a total of four hours; and walk for five minutes and/or 50 feet with a cane.  **(R. 491-492).**  Plaintiff was deemed incapable of walking one block at a reasonable pace on rough or uneven surfaces.  **(R. 496).**  Plaintiff was to never use left side foot controls, and to use right side foot controls only occasionally.  **(R. 493).**  Although a wide range of postural limitations were noted, Dr. Tippett specified that he was not implying that those postural limitations were considered permanent; rather, plaintiff was considered "treatable."  **(R. 494).**  Dr. Tippett also noted that plaintiff was not to travel without a companion for assistance and cannot use public transportation.  **(R. 496).**

Rehabilitation counselor Frank M. Trares opined that, based on Dr. Vest's evaluation indicating plaintiff was only able to perform sedentary work,  plaintiff was not physically capable of performing his immediate past job.  **(R. 420, 424 and 453).**

## ALJ Muldoon's Decision

In a written decision dated January 17, 2008, ALJ Thomas C. Muldoon ruled that, although plaintiff had medically established degenerative disc disease of the lumbrosacral spine, with mild radiculopathy to the left side, he was not entitled to disability benefits for any period of time.  **(R. 13-19).**  Rather, plaintiff was found to have the residual functional capacity for light work, albeit with some limitations.[2]  **(R. 16).**  More specifically, plaintiff was considered able to

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do

lift and/or carry 10 pounds frequently and 20 pounds occasionally; and he was limited to only occasional climbing, balancing, stooping, kneeling, crouching or crawling. **(R. 18).** The ALJ's residual functional capacity mirrored that of the agency physician, Dr. B. Rock Oh. Plaintiff was deemed capable of performing his past work as an assembler or as a driver. **(R. 18-19).**

In reaching his decision, ALJ Muldoon found that plaintiff and his wife were not fully credible with respect to plaintiff's impairment. **(R. 18).** The ALJ viewed the preponderance of the evidence as inconsistent with the allegations of disability. **(R. 14).** The ALJ reviewed the records of Drs. Burris and Vest, noted that plaintiff was released to work June 3, 2003 and fired on August 4, 2003, cited the February 2004 residual functional capacity assessment indicating plaintiff should not lift more than 10 pounds, and was limited to standing or walking for only brief periods. **(R. 15).** The ALJ also observed that plaintiff did not see a doctor or physician's assistant between February 2005 and May 2006. **(R. 16).** The ALJ also took Dr. Tippett's evaluation into consideration. **(R. 16).**

The ALJ found that plaintiff's only medically established impairment was his lumbar spine problem, thereby eliminating Dr. Tippett's mention of an upper extremity impairment. **(R. 16).** ALJ Muldoon stressed that the more restrictive limitations found by Dr. Tippett were deemed treatable– not irreversible. **(R. 17).** Dr. Vest's 2003 work release, plaintiff's return to

---

substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." **20 C.F.R. § 404.1567(b).** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." **20 C.F.R. § 404.1567(a).**

work (at a job requiring more than light exertion), and plaintiff's July 2003 work attempt at heavy construction were cited by the ALJ. **(R. 17).** The fact that medical tests only revealed mild degenerative changes was also highlighted. **(R. 17).** The fact that surgery was never recommended, and the paucity of signs usually associated with chronic, severe musculoskeletal pain, factored into the ALJ's decision. **(R. 17).** The ALJ reasoned that the preponderance of the medical evidence of credible back pain was closer to the evaluations offered by Dr. Burris in February 2003, Dr. Vest in June 2003, and the State medical evaluator, Dr. B. Rock Oh in March 2005. **(R. 17).**

## The Standard of Review

To be entitled to disability insurance benefits the claimant must establish that he is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." **42 U.S.C. § 423(d)(1)(A).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *See Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir.**

1992); *see also* **20 C.F.R. § 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).**   Thus, the Court must determine not whether plaintiff is in fact disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  *See Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997).**  Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence.  *Sample v. Shalala*, **999 F.2d 1138, 1143 (7th Cir. 1993).**

A negative answer at any point in the five step analytical process, other than at the third step, stops the inquiry and leads to a determination that the claimant is not disabled.  *Garfield v. Schweiker*, **732 F.2d 605 (7th Cir. 1984).**  If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment (step three).  If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at step four to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984)**; *see also Young v. Barnhart*, **362**

**F.3d 995, 1000 (7th Cir. 2004) (the claimant bears the burden of proof remains with the claimant through the forth step).**

Although the standard of review applied by this reviewing court requires the ALJ's decision to be supported by substantial evidence, an ALJ utilizes a preponderance of the evidence standard, the default standard in civil and administrative proceedings. *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996).

### Analysis

ALJ Muldoon's analysis stopped at step 4, when he determined plaintiff was capable of performing past work. Steps 1-3 of the five step analytical framework are not disputed, therefore the Court's analysis will commence at step 4, regarding whether plaintiff can perform past work.

Residual functional capacity is an *administrative assessment* of what work-related activities a claimant can perform despite his or her limitations. *See* 20 C.F.R. § 404.1545(a); and *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). "In assessing the claimant's [residual functional capacity], the ALJ must consider both the medical and nonmedical evidence in the record." *Id.* A treating source's opinion will generally be given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ." 20 C.F.R. § 404.1527(d)(2); *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). But, the law does not *require* an ALJ to accord a treating physician's opinion more weight than a consulting physician's opinion. *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)*; White v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2005); *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992). Drs.

11

Burris and Vest are "treating physicians."

Dr. Tippett, an orthopedic surgeon, did not treat plaintiff. However, he is obviously an expert, and he did examine plaintiff. In accordance with Section 404.1527(f)(2), state agency physicians are deemed experts in Social Security disability evaluation, and an ALJ may rely on their opinions, provided the usual evidentiary support is present and the ALJ explains the weight given to the agency physician's opinion. Dr. B. Rock Oh is an agency physician. An ALJ weighs conflicting evidence from medical experts, and a reviewing court may not re-weigh the evidence. **Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004).** "An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).

Plaintiff argues that the ALJ did not accord the opinions of Drs. Vest and Dr. Tippett adequate weight. Plaintiff contends Vest and Tippett concluded that plaintiff cannot work without severe restrictions and at less than the sedentary level. This is a specious argument that ignores the 12-month durational requirement and the chronological ebb and flow of plaintiff's impairment, and overstates the limitations recognized by the doctors and supported by the evidence.

In order to qualify for benefits, an impairment must last or be expected to last for a continuous period of not less than twelve months. **42 U.S.C. § 423(d)(1)(A).** Plaintiff was injured January 28, 2003. On June 3, 2003– just over five months post injury– Dr. Vest released plaintiff to return to regular duty at work. **(R. 163 and 184).** At that time, plaintiff's work as a laborer/packer, according to his own description, can be characterized as "medium" exertional

work, meaning it required lifting up to 50 pounds.  (*See* **R. 77, 144, 208 and 20 C.F.R. § 1567).**

In July 2003, one month after being cleared for work, plaintiff told Dr. Vest that he was not working because he had been terminated, but he was looking for work.  **(R. 165).**  There is no indication plaintiff would have stopped working, due to his back problems, had he not been terminated.  However, plaintiff was complaining of increased pain, and Dr. Vest opined that he thought it would be difficult for plaintiff to be working, and he recommended additional steroid injections.  **(R. 165).**  Plaintiff was issued work excuses from that time through the end of 2003.  **(R. 185-190).**  Nevertheless, on October 30, 2003, plaintiff reported that he was still looking for work.  **(R. 168).**  In any event, in February 2004 a functional capacity evaluation indicated plaintiff might be able to function at the sedentary level, walking and standing for only brief periods.  **(R. 208).**  At that time, plaintiff sat for 90 minutes without complaint; he stood for 10 minutes.  **(R. 218).**  Dr. Vest concurred, prescribing permanent restrictions:  no lifting over 10 pounds; walk or stand for only brief periods; and work only at the sedentary level.  **(R. 172).**  Consequently, it appears that plaintiff did not even satisfy the 12-month durational requirement.

Insofar as plaintiff's back problems continued and are chronic, between April and December 2004, plaintiff did experience some exacerbation of his injury, but he steadily improved to where in December 2004 plaintiff was only slightly tender, with no spasms, and Dr. Vest opined that injections were no longer necessary, although Darvocet and Flexeril were still prescribed.  **(R. 457, 176-177, 179).**  Dr. B. Rock Oh's March 2005 residual functional capacity assessment indicates plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk and sit for six hours in an eight hour work day.  **(R. 225).**  Occasional postural limitations were noted.  **(R. 226).**  Thus, two years post injury plaintiff was still deemed capable

of light work and/or at least sedentary work, with postural limitations.

Dr. Tippett's November 2007 opinion is somewhat misleading and not entirely consistent with the medical evidence.  Dr. Tippett concluded plaintiff had degenerative disc disease of the lower lumbar spine, with left lumbar radiculopathy, as well as mild weakness in his left upper extremity.  **(R. 489)**.  Dr. Tippett opined that plaintiff could lift up to 10 pounds (frequently and occasionally); sit for 10 minutes at a time, for a total of four hours during an eight hour work day; stand for five minutes at a time, for a total of four hours; and walk for five minutes and/or 50 feet with a cane.  **(R. 491-492).**  Again, this would generally qualify plaintiff for sedentary work.  However, plaintiff was deemed incapable of walking one block at a reasonable pace on rough or uneven surfaces, and he was to never use left side foot controls, and to use right side foot controls only occasionally– thus requiring a traveling companion.  **(R. 493 and 496).**  Although a wide range of postural limitations were noted, Dr. Tippett specified that he was not implying that those postural limitations were considered permanent; rather, plaintiff was considered "treatable."  **(R. 494).**  Therefore, the ALJ correctly did not consider those additional restrictions as altering the principal exertional profile, which would allow for at least sedentary work.  With respect to the key aspect of sedentary work– sitting– Dr. Tippett's opinion that plaintiff could sit for only 10 minutes at a time is contradicted by the fact that plaintiff sat for 90 minutes during the February 2004 evaluation.  **(R. 218).**   Also, the last x-rays taken are consistent with a non-disabling condition, showing only mild compression at L-1, slight narrowing at L5-S-1, and mild degenerative changes in the lower lumbar spine.  **(R. 490).**

The Court perceives that the evidence supports the conclusion that from January 2003 through January 2008 plaintiff could perform work at least at the sedentary level with some

restrictions. That ALJ Muldoon concluded that plaintiff had the residual functional capacity for light work with limitations is of no import with respect to the essential questions, whether plaintiff was capable of performing his past work and whether he was disabled.

In *Nolen v. Sullivan,* 939 F.2d 516 (7th Cir. 1991), the Court of Appeals for the Seventh Circuit stated:

> Even if the claimant is unemployed and his disability is severe, an ability to perform the claimant's previous job disqualifies him from receiving DIB. In *Strittmatter v. Schweiker,* 729 F.2d 507 (7th Cir.1984), we held that an ALJ cannot describe a claimant's job in a generic way-there, "sedentary"-and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work. Instead, the ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks. *Id.* at 509; *see also* S.S.R. 82-62 (1982) ("Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work.").

**Nolen, 939 F.2d at 518.**

ALJ Muldoon concluded that plaintiff could perform at least some of his past jobs– as an assembler or as a driver. **(R. 18-19).** According to plaintiff, his job as an assembler required lifting up to 10 pounds, sitting for 30 minutes out of the day, and standing, walking and bending in all manners throughout the day. **(R. 78).** He described his job as a truck driver as requiring lifting less than 10 pounds, sitting for a total of six and a half hours per day, walking and standing for one and a half hours each, climbing for three and a half hours, and kneeling, crouching and reaching for 30 minutes to an hour, total during te day. **(Doc. 80)**. According to Social Security Ruling 82-62, the claimant is the primary source regarding past work, and the claimant's description of the exertional and nonexertional demands are generally sufficient for

15

determining the skill level. As defendant stresses, the question is whether plaintiff can perform his past work, not which exertional label is appropriate. Therefore, plaintiff's argument that the ALJ should have done more to assess the requirements of plaintiff's past work is a nonstarter. Plaintiff does not argue that plaintiff's descriptions of his past work are false.

Both of those jobs match the functional capacity assessments offered by Dr. B. Rock Oh. **(R. 491-492).** Moreover, the lifting aspect comports with Dr. Vest and Dr. Tippett's evaluations. **(R. 172 and 491-492).** The sitting aspect comports with plaintiff's testimony in August 2007 that he could sit for 35-40 minutes at a time **(R. 519)**, and with the fact that he sat for 90 minutes during his 2004 evaluation without any complaints **(R. 219)**. The walking aspect comports with Dr. Vest's opinion that plaintiff could walk for brief periods at a time. **(R. 172).** And the postural aspects of both jobs comport with all three doctor's evaluations.[3] Thus, there is substantial evidence to support the conclusion that plaintiff was able to perform his past work, and he therefore is not disabled and entitled to benefits. Consequently, the analysis stops at Step 4 and no analysis by the ALJ or this Court is warranted relative to whether the combination of age, limited education and residual functional capacity render plaintiff disabled.

**IT IS HEREBY ORDERED** that, for the aforestated reasons, the decision of the Commissioner of Social Security denying plaintiff Samuel Hogsett Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423, or even a Period of Disability (POD) pursuant to 42 U.S.C. § 416(i) is **AFFIRMED** in all respects. Judgment shall enter accordingly.

---

[3]Again, it must be remembered that Dr. Tippett's postural limitations were deemed treatable.

**IT IS SO ORDERED.**

**DATED:  September 28, 2009**

                                                          **s/ Clifford J. Proud**
                                                          **CLIFFORD J. PROUD**
                                                          **U. S. MAGISTRATE JUDGE**